G’Neall J.
delivered the opinion of the Court.
I will consider the grounds of the prisoner’s motions in arrest of judgment, and for a new trial, in their order.
1st. An indictment, in the language of Lord Hale, is a plain, brief, and certain narrative of an offence committed, by any person, and of those necessary circumstances, that concur to ascertain the fact and its nature. 1 Chitt. Crim. Law, 168. 2 Hale, P. C. 169. If an indictment, on its face, is defective in any of those respects, it will be a good ground in arrest of judgment. But if enough appears'in the indictment to inform the prisoner to what he is to answer, to enable the jury to pass on his guilt or innocence, and the Court to pronounce the judgment of the law, it is generally sufficient. 1. Chitt. Crim. Law, 169. In the language of the late Judge Brevard, in the case of the State a. Fley and Rochelle,* “ a good legal exception to an indictment in arrest of judgment after verdict, must be for some defect in the indictment, for want of sufficient certainty in setting forth either the person, the time, the place, or the offence.” “ As to the form of an indictment, in a particular case, if the criminal law is silent, resort may be had to decisions on the requisites of pleading in the civil cases.” 1 Chitt. Crim. Law, 168. The objection here raised applies to the third and fifth counts of the indictment. In the third, he is indicted as present, aiding and abetting “ the aforesaid negro-man slave named Jack;” in the fifth he is indicted that “ the said negro-man slave *70 named Jack the said Thomas did stir up, move, abet, counsel, and procure to do, and commit the felony and murder aforeaid.” It is contended, that the description of the slave, by his name, is not sufficiently certain, without saying whose slave he was. In the description of persons, other than the prisoner on his trial, certainty to a common intent is sufficient. 1 Chitt. Crim. Law, 211. 2 Hawk. P. C. ch. 25, sec. 71, 72. Under this rule a person may be described by the name by which he is usually known. 1 Chitt. Crim. Law, 215. The slave was described by his only name, and the description is surely certain to a common intent. It is no objection to say, that there are other slaves of ' the same name. That applies rather to the proof: it is an ambiguity not created by the indictment, but by the evidence, and may be removed in the same way. There are in every •^district many white men of the same Christian and surname ; but because this is the fact, it does not follow, that any other description of one of them than by his usual name, would be necessary in an indictment. The objection will not appear in it; for,we are not to intend that there is another person of the same name, until it appears to be so either from the indictment itself, or from the proof. If it should appear from an indictment that two persons of the same name, were in some way connected with, or concerned in the same offence, and nothing appeared, by which their separate identity could be ascertained, it might be a good exception in arrest of judgment: but if the difficulty arises from the proof, then the proof must fix the identity.. But it is said that an acquittal in this case could not have been pleaded in bar, to an indictment charging him as a principal in the second degree; or as an accessary before the fact, to a negro-man slave named Jack, the property of Stephen Crank. I am satisfied that it could have been so pleaded. The indictment here shows that he was principal in the second degree, or as an accessary before the fact to a negro-man slave named Jack, who murdered Stephen Crank. The legal offence is the same, and unless it could be shown, that two persons of that name were murdered by two negro-men slaves of same name, there could be no doubt that it was the same crime. If, however, there was any thing in the objection, it comes too late after a verdict. The objection is to the description of the agent, who committed the fact.- If this was uncertain, a demurrer to the indictment, or a *71 motion to quash it, was the proper course. The evidence and verdict have now rendered that certain which was before supposed to be uncertain : and according to a well settled rule in eivil cases, a defective description of a slave, or other chattel, the subject matter of the suit, is cured by the verdict. Teague v. Griffin, 2 N. & M. 93: and as there is nothing in the criminal law, contrary to it, we may well deduce from decisions on civil proceedings, a rule to govern criminal cases.
2d. The objection raised by this ground is as to the description of the wound or injury inflicted on the deceased; and from which his death resulted. In general where a wound penetrates through the skin, and into the flesh, it is necessary to state its length and depth. 3 Chitt. Crim. Law. 734. The reason assigned for this particularity of description is, that the Court may see from it, that it was an adequate cause of death. Ib. But if the wound penetrates through the body, or a limb is cut off, it is unnecessary to give any description of the length or depth of it. Because in the first case, if it penetrates through the body, it is of sufficient depth to prove fatal: and in the second case, it is impossible to describe the wound by its length and depth. 3 Chitt. Crim. Law, 734, 735. But a bruise cannot have any ascertained depth, or length ; nor would any depth or length of a bruise make it necessarily appear to be an adequate cause of death. It is therefore, always charged in indictments to be “ one mortal bruise.” 3 Chitt. Crim. Law, 759, 760, 763. . In this case it is said, that the wound, or injury penetrated, through the skin, fractured and drove in the skull. This may be so, and still it does not vitiate the indictment. For on its face, it charges according to the established form, an adequate cause of death. If the evidence did not support the description, the objection would be to it, and not the indictment. But the objection could not even in'that point of view avail the prisoner. For the term “ mortal” is indispensably necessary to be used in describing the wound or bruise, and when so described, an adequate cause of death has been assigned, which will be supported by evidence of any deadly wound, or bruise.
3d. This ground applies solely to the first count in which the prisoner is indicted as principal in the first degree. The other four counts conform to the technical accuracy which this ground contemplates. The description in the first count is, however. *72 sufficient. It describes the blows as given upon tbe head and the mortal bruises as there inflicted. This is according to several precedents. See 3 Chitt. Crim. Law, 759, 763. But without reference to forms, it may be justified on principles. The object of stating the part, on which the injury was inflicted, is to enable the Court to see that it was some vital part, from the injury of which death would likely ensue. The head is supposed by some to be the temple of life ; and whether this supposition be true or false, it is a most vital part. There is no difference as to the effect upon life, upon wliat part of the head an injury is inflicted ; death may be the consequence in one, as well as another. There is no necessity then, to distinguish whether the injury is inflicted on the right or left side, the fore or hind part of the head. To obviate every possible objection, this technical accuracy is usually observed by the solicitors : but it is not indispensably necessary to the validity of the indictment. Where an, injury is inflicted on the neck, breast, stomach, or body, it is-sufficient so to state it, without designating the part of either. 3 Chitt. Crim. Law, 736.
The fourth and fifth grounds may be considered together, and they present two propositions: First that when a prisoner is indicted as principal in the first and second degree ; and as an accessary before the fact and there is a general verdict of guilty, no judgment can be rendered. Second, that when there is a good and bad count; and a general verdict of guilty, no judgment can be given. The same indictment against tbe same defendant may contain counts for several felonies of the same degree; and it is no ground of either demurrer, or in' arrest of judgment. 1 Chitt. Crim. Law, 252, 253. The reason is obvious, because the same plea may be pleaded to, and tbe^same judgment given on all the counts. If therefore, several felonies of the same degree be included in the same indictment^ and there is a general verdict, judgment may be given, on any or all of them according as they may have been supported by the proof. It is supposed that some of the counts of the indictment in this case are defective; but this is not the case, they are all good. The objection, however, is, in reality, that some of the counts are not supported by the evidence, and hence it is inferred, that the judgment ought to be arrested. This I have already shown cannot be done. But let it be conceded, that one of the counts *73 is defective, still it cannot avail the prisoner. For in England, it is well settled, that where there is a general verdict of guilty, and there is any good count in the indictment, it will be referred to that, and supported. 1 Chitt. Crim. Law, 249. The reason is, because the jury on the law and the facts, have found the prisoner’s guilt; and enough appearing on the record to enable the Court to see his crime, and award its appropriate legal punishment, there is nothing to prevent the rendition of judgment. In civil cases in England a different rule prevails : there, if there are good and bad counts in a declaration and a general verdict of damages is rendered, the judgment will be arrested. Because, say the English judges, the jury may have given damages on the bad as well as the good counts for aught that appears, and in this uncertainty no judgment can be given. But in this state the rule is the same in civil and criminal cases. If there are good and bad counts and a general verdict, in legal intendment, it is considered as given on the good counts. Neal v. Lewis, 2 Bay, 204. State v. Poole, 2 Treadw. 494. The State v. Fley & Rochelle, decided, April Term, 1809, of the constitutional Court at Columbia. In the argument it was said, that in no capital case had this rule been sanctioned. If this was the case it could not affect it, for to be a rule it must be uniform in its operation, and must apply to capital cases, as well as misdemeanors. In Poole’s case, I find on looking into the statement of the brief, preceding Judge Colcock’s opinion, that it was a ease of larceny for stealing an axe. Fley’s and Rochelle’s case was one of murder, and in that case Judge Brevard says, “ there was no necessity for the jury’s saying on which count they found the verdict; for if any count, in the indictment is good, it will support the verdict.”
The sixth and last ground in arrest of judgment was decided in the case of the State v. Sims, decided at this term : in that opinion I concurred, and I have nothing to add to the able and conclusive argument given on this point, in that case.
The first and second grounds for a new trial, were also considered, and decided in the same case. Upon the third, it is only necessary to remark, that the State had the right to elect which of the prisoners should be first tried. This has been the settled practice for many years, and cannot now be questioned.
*74 The fourth ground in its terms was also considered, and decided in Sims’ case ; but in that case the record of conviction of the slaves was given in evidence, and the parol evidence of their confessions was received to show upon what grounds their conviction took place: In the case now before us, the record of the conviction of the slave Jack was offered by the State and excluded by the Court; and it is necessary under these circumstances to consider the admissibility of the parol evidence on which the prisoner has been convicted.
In general the récord of conviction of the principal should be given in evidence on the trial of the accessary : 1 Chitt. Crim. Law, 272, 273. 2 Hawk. P. C. ch. 29, sec. 36, 37, 38, and 39. But if the accessary and principal are tried together, or if the accessary consent to his trial before that of his principal, or if the principal die, or is pardoned before trial, then the conviction of the principal cannot, of course, be required to be produced, because none has taken place, and in two of the cases can never take place. 2 Hawk. P. C. ch. 29, sec. 41, 45, 1 Chitt. Crim. Law, 272. In this case, if it was necessary to refer the conviction to the fifth count charging him as an accessary before the fact, I should hold that the record of the conviction of the principal was the best evidence of his guilt, and ought to have been given in evidence : it is true it would have been only prima facie evidence of it, for the prisoner might have shown his principal’s innocence by any competent testimony. But unfortunately for the prisoner, he is indicted as principal in the first and second degree, and the evidence too well warrants the conclusion that he is a principal in the second, if not in the first degree. Under these counts it was competent to prove by parol that Jack killed the deceased, either as the agent or instrument of the prisoner ; or of his own mere motion, and that the prisoner was present aiding and abetting him. I am very much disposed to say with Judge Brevard, in the case of the State v. Fley & Rochelle, that the distinction between the principal in the first or second degree, is only nominal; and ought to be exploded : and, that if the prisoner was present aiding and abetting the murder of his father, he may well be charged to have committed the murder with his own hand, notwithstanding in truth and in fact the slave Jack struck the deadly blow. For when one does an act in the presence, and with the assistance of another, the act done is the act of both. *75 2 Hawk. P. C. ch. 29. sec. 7. 1 Chitt. Crim. Law. 256. State v. Fley & Rochelle.
The fifth ground supposes that the Judge erred, in not instructing the jury, that if the act committed by the slave, had been by a white man, it might have amounted to only manslaughter ; and if so the prisoner could be guilty of no higher offence. The Judge was, I think, correct: on the facts of the case no such legal distinction could arise. The slave was either guilty of murder, or guilty of no criminal offence ; and the prisoner stands precisely on the same footing. It is, I think, a mistake, to suppose, that if a white man had done the same act, and would have been only guilty of manslaughter, this could have made any difference in the degree of guilt which the prisoner incurred. To see that the distinction is visionary, let us see what is manslaughter : it is an unlawful killing of a human being, upon sudden heat and passion, arising from reasonable provocation. Reasonable provocation being proven reduces a killing, upon a consequent sudden heat of passion to manslaughter. What is reasonable provocation 1 It is as various as the different stations and relations of man. Two freemen are equal, the slightest touching of the person of one by the other in a rude, insolent, or angry manner might reduce a killing to manslaughter. Parent and child, master and apprentice, stand in a different relation to each other: obedience is due from the child, or apprentice to the parent or master, and to enforce it, they have the right to use moderate correction; if in the exercise of this right, the child or apprentice was to kill the parent or master, it would be murder. To a master, by the common law of this State, a slave owes passive obedience; to enforce it the master has the right of correction, and if while exercising this right the slave should kill his master, he would be guilty of murder at common law, and not by statute; and his aiders and abetters being-present, would be guilty of the same offence. Let it besupposed, as the prisoner desires, that his father was correcting the slave Jack, and that Jack, while writhing under the lash, put the father to death ; that all this occurred in the presence of the prisoner, and whilst his father was supplicating him for assistance; that although he took from the slave one deadly weapon, he left him in posssession of another equally deadly; and that he never even lifted a finger or spoke a word to save his father from the enraged savage, who was with blow *76 after blow depriving him of life : and then let it be asked what -g Offenoe ? Would not the reply be, it is equal to, or greater than that of the slave 1 If the latter is guilty of murder so also is the prisoner. But the facts do not even authorize this supposition. The proof warrants the conclusion, that the blows which the prisoner said he heard, and which it is too probable he saw, and did not prevent, were only the deadly blows which the slave inflicted on his parent, while calliug the unfortunate parricide to his rescue; and that it was a deliberate and savage murder, without even the excuse of a blow from the master or father. A case might be supposed where the prisoner’s guilt would be murder, notwithstanding the actual slayer was only guilty of manslaughter. If a white man and the prisoner’s father had been engaged in a sudden affray, and the prisoner with a settled design of taking his father’s life, had aided his adversary in killing him, it would bo murder in him, while it might be but manslaughter in the actual slayer. Plowd. 97, 100. Indeed I would go still further, and say that a case might exist where the slayer might be legally innocent, and the prisoner guilty of murder. If Jack had belonged to him, and he had forced him against his will, to kill the father of the prisoner; die slave acting without a will, but by his master’s compulsion, would be the bloody instrument of bis cruelty, but might be guilty of no legal offence: the master would be guilty of murder. • [See Slater’^case decided at Charleston, by Mr. Justice Wilds.] It was supposed at the bar, that the offence in this ease on the part of the slave, was analogous to that of petit treason in England ; and that a stranger who procured that offence to be committed in his absence, could not be an accessary to it; but on looking into, Hawk. P. C. ch. 32, sec. 6. and 3, Chitt. Crim. Law, 742, it will be seen that he would be an accessary, before the fact to the crime of petit treason. It is true that if at common law, the offence of killing a master by a slave had been oidy manslaughter, and by statute, he, as the actual slayer, had been declared to be guilty of murder, then the prisoner as a principal in the second degree could only have been guilty of manslaughter. But if it had been made by statute a new felony, or a statute had taken away the benefit of clergy from it, as an existing felony at common law, then the prisoner being present aiding and abetting its commission, would be a principal, and could be charged as such. 2 Stark. Ev. 4 part, 11.
*77 The sixth and eighth grounds may be considered together. The rule is familiar, that confessions of guilt extorted from an accused, by either hope or fear created by any one with a view to obtain from the prisoner a confession of his guilt, cannot be received; but yet if a confession thus obtained point to a substantive fact, from the proof of which guilt can be established, it is competent evidence. 2 Stark. Ev. 4 part, 49, 50, and 51. State v. Watts & Pindar. But the facts in this case do not warrant the conclusion that the prisoner’s confession was obtained from him through hope or fear created by any one with a view to induce him to confess. Wylie used no threats, nor held out any hope of immunity from punishment to induce the prisoner to confess. He only advised him if he knew any thing of Jack’s guilt, to disclose it, and thereby prevent the reproach, which would, otherwise be fixed on the family of the deceased, if it should be believed, that they, to save the value of a slave, had concealed the murder of the husband and father, if upon this he had confessed his own guilt, it would have been evidence against him; for there was no inducement held out to him to confess any thing against himself, but he denied to Wylie all knowledge of Jack’s guilt, and even asserted his innocence. If this false statement has prejudiced him, his blood must be on his own head, for nothing said by Wylie was calculated to induce him to assert what might not be true, in order to save himself from danger. His confession to Cabeen might have been, as I have no doubt it was, made in great agitation. For if guilty, how could he look on the mangled corpse of his father, after its disinterment, without feeling like, and saying with the guilty Cain, “ every one that findeth me, shall slay me !” If under this agitation, thus produced, his guilty conscience prompted the disclosure which he did make, it was evidence against him, if Cabeen did not superadd the influence of hope or fear, which would induce us to believe that it proceeded from this influence, and not from his own troubled will. Mr. Cabeen, as the sheriff of Chester District, arrested the prisoner, and soon after tied him; soon after this, the prisoner asked Cabeen to step aside with him, which he did; he then asked Cabeen if those who concealed a murder were equally guilty with those who committed the act; he told him he believed the law so considered them, only they were not generally so rigorously dealt with. Upon *78 this the prisoner made the confession, which Mr. Cabeen was. permitted by the Circuit Court to prove, and, as I think, correctly.
It is to be remarked that the prisoner sought the opportunity, and the person, to whom he thought proper to confess; and asked his legal opinion of the consequences of the crime of which he confessed himself to be guilty: Mr. Cabeen made no proposition to him to confess, he held out nothing to induce it, he barely gave a legal opinion, in which he stated the law more Strongly against the offence of which they were speaking than it really is. For the fact of concealing a murder might have made the prisoner an accessary after the fact; but that, is a clergyable felony. In no point of view can his confession to Cabeen be considered as obtained by improper influence. It was the voluntary outpouring of his guilty conscience, and is not only evidence, but the very best evidence of his guilt.
The seventh ground was not insisted on by the prisoner’s counsel, on the argument, and the Court see no ground to be dissatisfied with the decision of the Circuit Judge in this respect.
The ninth ground relates to the sufficiency of the evidence to convict the prisoner. Several months ago the volume of evidence now submitted to the Appeal Court, was in substance submitted to me, on application to bail the prisoner. I was then satisfied of his guilt: I have again heard the evidence, and with an anxious desire to come to the conclusion, that one so young, might be innocent of the monstrous crime of parricide, I have again and again reviewed the facts; but my feelings have been compelled to yield to my judgment, and I am constrained to say with the jury, that his hands are stained with the blood of his father, and that he is guilty of his murder. ,
The motions in arrest of judgment and for a new trial are refused.

 This case is not in print.